WEST JERSEY AND SEASHORE RAILROAD COMPANY ET AL., PROSECUTORS, v. PUBLIC UTILITY COMMISSIONERS OF NEW JERSEY, RESPONDENTS.

Argued October 7, 1930—Decided November 22, 1930.

Before Justices CAMPBELL and BODINE.

For the prosecutors, *Bourgeois & Coulomb* and *Thompson & Hanstein.*

For the respondents, *L. Edward Herrman, Robert K. Bell* and *Samuel F. Eldredge.*

PER CURIAM.

The prosecutors petitioned the board of public utility commissioners for leave to eliminate five grade crossings in Elder township, Cape May county, and substitute two others in place thereof. The crossings asked to be vacated are known as Bennett station, Tabernacle road, Bob Hand's, Taylor road and Sally Marshall's. The substituted crossings proposed are in the immediate vicinity of the Sally Marshall crossing and the Bennett station crossing. Such substitution practically amounts to the construction of a right angle, instead of a diagonal crossing, now existing at each of these points.

The two railroads run closely to, and parallel to, each other through the section in which these crossings are located and two public roads parallel the railroads, one on each side.

The nearest crossing south of the Sally Marshall crossing is that known as York road. This is to remain. The dis-

tance between such two crossings is three thousand seven hundred to three thousand eight hundred feet.

If the Taylor road, Bob Hand's and Tabernacle road crossings should be closed, the nearest crossing south of York road would be Bennett station and the distance between them would be about five-sixths of a mile.

The board found that the community in which these five crossings are located could be adequately and conveniently accommodated by the use of the two crossings; that the reduction of the number of crossings would promote public safety and reduce the hazard to public travel and would be in the public interest. The board further found that it had no authority to vacate the Taylor road, Bob Hand's and Tabernacle road crossings because no new crossing was intended to be substituted for each of them, and consequently made its order granting the permission prayed for as to the Sally Marshall and Bennett station crossings, and denied the application for leave to abandon the other three crossings.

.. This order the prosecutors seek to have reversed and set aside solely because of the finding of lack of jurisdiction by the board.

The authority of the board is to be drawn from the language of *Pamph. L.* 1913, *p.* 91, § 1, which is as follows:

"Whenever a public highway and a railroad cross each other at the same level and it shall appear to the board that such crossing is dangerous to public safety, or that public travel or such highway is impeded thereby, the board of public utility commissioners may order the company operating such railroad, within such time as said board may fix, to alter such crossing according to plans to be approved by said board, by substituting therefor a crossing not at the grade of such public highway either by carrying such public highway under or over such railroad, or by reconstructing such railroad under or over such public highway, *or by vacating, relocating or changing the lines, width, direction or location of such highway and the opening of a new highway in the place of the one ordered vacated.*"

It is the latter portion only of this section with which we are here concerned.

It is true that this court in *Erie Railroad Co.* v. *Public Utility Commissioners*, 89 *N. J. L.* 57 (at *p.* 67), said, referring to the Public Utility act: "This being a remedial statute, it should receive a liberal, rather than a narrow construction. As was said by Mr. Justice Dixon, speaking for the Court of Errors and Appeals, in reference to the first grade crossing statute passed by the legislature (*Pamph. L.* 1874, *p.* 45), 'the avowed object of these statutes is highly beneficent, and, therfore, its provisions tending toward the accomplishment of that object should be liberally construed.' *Read* v. *Camden*, 54 *N. J. L.* 347 (at *p.* 373). Subsequently this language was cited with approval, by that court, in the case of *Morris Dredging Co.* v. *Jersey City*, 64 *Id.* 587, 590."

However, such liberality cannot be extended to the point of reading into a statute powers which its plain language does not give. But notwithstanding this, the control over opening, vacating and altering of public roads is in the legislature under the constitution of 1844 and it may delegate its authority. *Hudson County Land Improvement Co.* v. *Seymour*, 35 *N. J. L.* 47.

The legislature has delegated the power inherent in itself, to the board of public utility commissioners. What it might have done itself it has delegated to a branch of the government created by itself. The powers of the former are coincident and co-equal with that of the granting power.

Giving to the statute the broad construction to which it is entitled and having in mind that the board found, as has been previously stated, "that the community in which these five crossings are located could be adequately and conveniently accommodated by the use of the two crossings," we think the conclusion reached by the board of public utility commissioners was erroneous.

Under such findings we think, therefore, that the board would have been warranted under the statute in finding that the substitution of the two new crossings in lieu of, and upon the vacation of the five, was proper.

The judgment of the board is therefore set aside.